**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**SCOTT DOMBROWSKI,**

                **Plaintiff,**                 **5:12-cv-638**
                                                                 **(GLS)**
                **v.**

**MICHAEL J. ASTRUE,**
Commissioner of Social Security,

                **Defendant.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Olinsky Law Group | KAREN S. SOUTHWICK, ESQ. |
| 300 S. State Street | TANISHA T. BRAMWELL, ESQ. |
| 5th Floor, Suite 520 | |
| Syracuse, NY 13202 | |
| | |
| **FOR THE DEFENDANT:** | |
| HON. RICHARD S. HARTUNIAN | KATRINA M. LEDERER |
| United States Attorney | Special Assistant U.S. Attorney |
| 100 South Clinton Street | |
| Syracuse, NY 13261 | |
| | |
| Steven P. Conte | |
| Regional Chief Counsel | |
| Social Security Administration | |
| Office of General Counsel, Region II | |
| 26 Federal Plaza, Room 3904 | |
| New York, NY 10278 | |

**Gary L. Sharpe**
**Chief Judge**

## MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiff Scott Dombroski[1] challenges the Commissioner of Social Security's denial of disability insurance benefits (DIB) and supplemental security income (SSI), seeking judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3). (*See* Compl. at 1, Dkt. No. 1.) After reviewing the administrative record and carefully considering Dombroski's arguments, the Commissioner's decision is affirmed and Dombroski's Complaint is dismissed.

## II. Background

On October 29 and 31, 2008, Dombroski filed applications for DIB and SSI under the Social Security Act ("Act"), alleging disability beginning February 1, 2007. (*See* Tr.[2] at 48-49, 137-141.) After his applications were denied, Dombroski requested a hearing before an Administrative Law Judge (ALJ), which was held on April 6, 2010. (*See id.* at 9, 20-47, 50-59.)

---

[1] It appears as though plaintiff's surname is misspelled in the Complaint and, subsequently, on the docket. While no change to the docket is necessary, the court refers to plaintiff throughout as "Dombroski."

[2] Page references preceded by "Tr." are to the Administrative Transcript. (*See* Dkt. No. 8.)

2

On April 12, 2010, the ALJ issued a decision denying the requested benefits, which became the Commissioner's final decision upon the Social Security Administration Appeals Council's denial of review. (*See id.* at 1-3, 9-19.)

Dombroski commenced the present action by filing a Complaint on April 13, 2012, seeking review of the Commissioner's determination. (*See* Compl.) The Commissioner filed an answer and certified copy of the administrative transcript. (*See* Dkt. Nos. 7, 8.) Both parties, seeking judgment on the pleadings, filed a brief. (*See* Dkt. Nos. 11, 12.)

### III. **Contentions**

Dombroski contends that the Commissioner's decision was the product of legal error and is unsupported by substantial evidence. (*See generally* Dkt. No. 11.) Specifically, he claims that the ALJ: (1) improperly discounted the weight assigned to the opinions of treating psychiatrist Mitchell Langbart; (2) failed to apply the appropriate legal standard in assessing his credibility; and (3) posed an incomplete hypothetical question to the vocational expert (VE) at step five of the sequential analysis. (*See id.* at 9-21.) The Commissioner counters that the ALJ employed the proper legal standards and that his decision is supported by substantial evidence.

3

(*See generally* Dkt. No. 12.)

## IV. Facts

The evidence in this case is undisputed and the court adopts the parties' factual recitations. (*See* Dkt. No. 11 at 2-9; Dkt. No. 12 at 1.)

## V. Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c)(3) is well established and will not be repeated here. For a full discussion of the standard and the five-step process used by the Commissioner in evaluating whether a claimant is disabled under the Act, the court refers the parties to its previous opinion in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI. Discussion

### A. Treating Physician

*1. July 14, 2009 Opinion*

Dombroski argues first that the ALJ provided inadequate explanation in support of his decision to accord portions of Dr. Langbart's July 14, 2009 medical source statement "little weight." (Dkt. No. 11 at 11-16.) The Commissioner counters that the ALJ properly applied the treating source

4

rule, and that his decision to discount the weight given to Dr. Langbart's opinion is supported by substantial evidence. (*See* Dkt. No. 12 at 5-8.) The court agrees with the Commissioner.

Controlling weight will be given to a treating source's opinion on the nature and severity of a claimant's impairments where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). When a treating source's opinion is given less than controlling weight, the ALJ is required to consider the following factors: the length, nature and extent of the treatment relationship; the frequency of examination; evidentiary support offered; consistency with the record as a whole; and specialization of the examiner. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). The ALJ must provide "'good reasons' for the weight given to the treating source's opinion.'" *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) (citations omitted). "Nevertheless, where 'the evidence of record permits [the court] to glean the rationale of an ALJ's decision,'" it is not necessary that the ALJ "'have mentioned every item of testimony presented to him or have explained why he considered particular evidence

5

unpersuasive or insufficient to lead him to a conclusion of disability.'" *Id.* (citation omitted).

The ALJ assigned "little weight" to Dr. Langbart's July 14, 2009 opinion "that [Dombroski] has extreme limitations in [his] ability to interact with [the] public and co-workers and marked limitations in [his] ability to interact with supervisors and respond appropriately to [the] pressures of work." (Tr. at 17.) The ALJ concluded that the functional limitations articulated by Dr. Langbart were "not supported by findings on mental status examination and are inconsistent with the claimant's very good activities of daily living." (*Id.*) In reaching that conclusion, the ALJ explicitly referenced 20 C.F.R. §§ 404.1527 and 416.927, as well as relevant social security rulings. (*See id.* at 13.) The ALJ also undertook a thorough discussion of the medical and testimonial evidence of record which suggested impairments less severe than those articulated by Dr. Langbart. (*See id.* at 13-17.) Finally, it is evident from the ALJ's direct citation to treatment notes spanning an eight month period, (*see id.* at 17), that the nature and duration of Dr. Langbart's treatment relationship with Dombroski were properly considered. As it is clear that he properly applied sections 404.1527(c) and 416.927(c), the ALJ did not err in failing to methodically

6

discuss each individual factor, and his assessment of Dr. Lanbart's July 2009 opinion is legally sound. *See* SSR 06-03p, 71 Fed. Reg. 45,593, 45,596 (Aug. 9, 2006) ("Not every factor for weighing opinion evidence will apply in every case.").

Dombroski's argument that the ALJ's decision to discount Dr. Langbart's assessment is not supported by substantial evidence is similarly unavailing. First, it is important to note that the ALJ did not discount Dr. Langbart's opinion wholesale, but rather adopted many of the limitations adduced by him in finding that Dombroski could perform only "simple, routine, low-stress tasks with limited general public contact." (Tr. at 13.) Dr. Langbart himself later concluded that Dombroski did not have "extreme" limitations in his ability to interact appropriately with the public or with co-workers. (*Compare id.* at 280-81, *with id.* at 309-11.) In fact, Dr. Langbart's subsequent March 23, 2010 medical source statement indicated less severe limitations than those contained in the July 2009 assessment in all but two functional categories. (*See id.*) While Dr. Langbart opined that Dombroski suffered "marked" limitations in his ability to interact with a supervisor and handle work pressure, (*see id.* at 281, 310), psychological consultant T. Inman-Dundon, Ph.D., found only "moderate" restrictions in

7

those areas, (*see id.* at 268). Additionally, Dombroski was capable of a wide range of daily activities, (*see id.* at 17), and, when pressed with a deadline to finish construction of a haunted house that "he and his parents offer[ed] to the public," Dr. Langbart noted that he worked "industriously at it," (*id.* at 303). Accordingly, the ALJ provided sufficient reasons for discounting portions of Dr. Langbart's July 2009 opinion, and his decision to do so is supported by substantial evidence.

*2.  March 23, 2010 Opinion*

Next, Dombroski argues that the ALJ's failure to explicitly discuss Dr. Langbart's March 23, 2010 medical source statement constitutes legal error which requires reversal and remand. (*See* Dkt. No. 11 at 16-17.) The Commissioner contends, and the court agrees, that the ALJ's omission does not necessitate remand. (*See* Dkt. No. 12 at 8-9.)

"[R]emand is unnecessary, even if the ALJ ignores a treating physician's opinion, when the opinion is essentially duplicative of evidence considered by the ALJ, and the report that the ALJ overlooked was not significantly more favorable to the plaintiff." *Seekins v. Astrue*, Civil No. 3:11CV00264, 2012 WL 4471266, at *5 (D. Conn. Aug. 14, 2012) (citing *Zabala v. Astrue*, 595 F.3d 404, 409-10 (2d Cir. 2010)). Where discussion

8

of an omitted medical report "would not have changed the outcome of the ALJ's decision," such omission constitutes "harmless error." *Walzer v. Chater*, No. 93 Civ. 6240, 1995 WL 791963, at *9 (S.D.N.Y. Sept. 26, 1995).

As noted above, Dr. Langbart's March 2010 medical source statement indicated greater mental functional capacity by Dombroski than did his July 2009 assessment. (*Compare* Tr. at 280-81, *with id.* at 309-11.) With the exception of two functional areas which remained consistent, the limitations articulated in Dr. Langbart's March 2010 opinion were less severe than those expressed in his July 2009 report. (*See id.*) In other words, to the extent that the second report was not duplicative of the first, it was less favorable to Dombroski. Additionally, at step five of the sequential analysis, the VE explicitly considered the most severe of the limitations contained in Dr. Langbart's March 2010 opinion. (*See id.* at 18-19, 39-47.) Accordingly, it is evident that the omitted report was duplicative, less favorable to Dombroski, and would not have changed the outcome of the ALJ's decision. *See Seekins*, 2012 WL 4471266, at *5. The ALJ's failure to explicitly discuss the March 2010 opinion therefore constitutes harmless error.

9

B.   **Credibility Determination**

Dombroski contends next that the ALJ's assessment of his credibility was legally flawed and is factually unsupported. (*See* Dkt. No. 11 at 17-20.) The Commissioner counters that the ALJ's credibility finding was legally sound and is supported by substantial evidence. (*See* Dkt. No. 12 at 9-12.) The court agrees with the Commissioner.

Once the ALJ determines that the claimant suffers from a "medically determinable impairment[] that could reasonably be expected to produce the [symptoms] alleged," he "must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's [subjective] contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (internal quotation marks and citations omitted). In performing this analysis, the ALJ "must consider the entire case record and give specific reasons for the weight given to the [claimant's] statements." SSR 96-7p, 1996 WL 374186, at *4 (July 2, 1996). Specifically, in addition to the objective medical evidence, the ALJ must consider the following factors: "1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3)

10

precipitating and aggravating factors; 4) type, dosage, effectiveness, and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms." *F.S. v. Astrue*, No. 1:10-CV-444, 2012 WL 514944, at *19 (N.D.N.Y. Feb. 15, 2012) (citing 20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi)).

Relying principally on inconsistencies between Dombroski's subjective complaints and the objective medical evidence, as well as with his reported activities of daily living, the ALJ determined that those complaints were credible only to the extent that they were consistent with his RFC. (*See* Tr. at 16.) Specifically, the ALJ noted that, although Dombroski alleged the inability to work because of psychological impairments and chronic back pains, he admitted to being able to cook, clean, listen to the radio, play computer games, drive, build props for a haunted house and drink beer with friends. (*See id.* at 16-17.) The ALJ also found that Dombroski's complaints were "not supported by objective clinical, laboratory and/or radiological findings and they [were] contradicted [by] the assessments of the consultative examiner [and] the [VE]'s testimony." (*Id.* at 16.) Contrary to Dombroski's contentions, however, the ALJ's credibility analysis did not end there. In addition to inconsistencies

11

with medical evidence and daily activities, the ALJ discussed Dombroski's physical and psychological symptoms, the types and effectiveness of current forms of medication and treatment, and past occurrences of non-compliance with treatment. (*See id.* at 13-17, 281, 286-87, 290.)

Although the ALJ did not undertake a step-by-step exposition of the factors articulated in 20 C.F.R. §§ 404.1529(c) and 416.929(c), "[f]ailure to expressly consider every factor set forth in the regulations is not grounds for remand where the reasons for the ALJ's determination of credibility are sufficiently specific to conclude that he considered the entire evidentiary record." *Judelsohn v. Astrue*, No. 11-CV-388S, 2012 WL 2401587, at *6 (W.D.N.Y. June 25, 2012) (internal quotation marks and citation omitted); *see Oliphant v. Astrue*, No. 11-CV-2431, 2012 WL 3541820, at *22 (E.D.N.Y. Aug. 14, 2012) (stating that the 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) factors are included as "'examples of alternative evidence that may be useful [to the credibility inquiry], and not as a rigid, seven-step prerequisite to the ALJ's finding'") (quoting *Snyder v. Barnhart*, 323 F. Supp. 2d 542, 546 (S.D.N.Y. 2004)). Here, the ALJ explicitly acknowledged consideration of the 20 C.F.R. §§ 404.1529(c) and 416.929(c) factors, (*see* Tr. at 13), and it is evident from his thorough

12

discussion that his credibility determination was legally sound. *See Britt v. Astrue*, 486 F. App'x 161, 164 (2d Cir. 2012) (finding explicit mention of 20 C.F.R. § 404.1529 and SSR 96-7p as evidence that the ALJ used the proper legal standard in assessing the claimant's credibility). Additionally, the ALJ's determination that Dombroski's subjective complaints were not credible to the extent that they suggested impairment greater than the ability to perform "less than a full range of light work . . . limited to simple, routine, low-stress tasks with limited general public contact" is supported by substantial evidence. (Tr. at 13.)

## C. Step Five Determination

Finally, Dombroski argues that, because the hypothetical question posed to the VE was incomplete, the ALJ's determination at step five is not supported by substantial evidence. (*See* Dkt. No. 11 at 20-21.) Specifically, he alleges that the ALJ's errors in assessing his RFC and credibility, along with a failure to explicitly include in the hypothetical question the limitations articulated by examining psychiatrist Jeanne Shapiro fatally undermine the step-five determination. (*See id.*) As discussed above, however, the ALJ's RFC and credibility findings were legally sound and are supported by substantial evidence. Although the

13

hypothetical question did not include a verbatim recitation of Dr. Shapiro's limitations, it appropriately encompassed the restrictions contained in the ALJ's RFC analysis. (*See* Tr. at 38-47.) Furthermore, as noted previously, even though the ALJ did not explicitly discuss Dr. Langbart's March 2010 medical source statement, Dombroski's non-attorney representative added the marked limitations contained within that report to the hypothetical question posed to the VE. (*See id.* at 42-47.) Even considering those marked limitations, the ALJ found that a hypothetical claimant could perform the jobs noted by the ALJ at step five. (*See id.*) As such, the ALJ's step-five determination was free of legal error and is supported by substantial evidence.

**D.**     **Remaining Findings and Conclusions**

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

## VII.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Dombrowski's Complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this

Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

February 11, 2013
Albany, New York

*Gary L. Sharpe*
Gary L. Sharpe
Chief Judge
U.S. District Court